IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL No: 11-641M |
| VS. | |
| GATHON SHANNON. | Hon. Alan N. Bloch |
| Defendant. | |

## BRIEF IN OPPOSITION

AND NOW, comes the Defendant, Gathon Shannon, by and through his attorney, PATRICK K. NIGHTINGALE, ESQUIRE, who brings the within Brief in Opposition to and in support thereof sets forth the following:

*Procedural History*

On September 29, 2011, Defendant, Gathon Shannon (hereafter Defendant) was arrested and charged via criminal complaint with Conspiracy to Deliver five kilograms or more of cocaine, codified at 21 U.S.C. §846, and Distribution and possession with intent to distribute 5 kilograms or more of cocaine, codified at 21 U.S.C. §841. Defendant was detained pending his Detention Hearing on October 4, 2011. After a lengthy hearing the Magistrate Judge Maureen Kelly agreed with the recommendations of Pre-Trial Services and released Defendant on a $20,000.00 unsecured bond with various conditions. Defendant's release was stayed at the Government's request pending its appeal of Magistrate Kelly's Order.

*Factual History*

Defendant was charged with conspiring with his co-defendants to distribute cocaine from December 9, 2009, through the date of his arrest, September 29, 2011. Evidence presented at the probable cause hearing demonstrated that the Government utilized Title III wiretap intercepts of the co-defendant's telephone to monitor a planned transaction of cocaine in the Pittsburgh area. Physical and wiretap surveillance allegedly showed the co-defendants preparing to engage in a transaction for sixteen kilograms of cocaine. At one point on September 29, 2011, a co-defendant was observed driving to a road side stop off of I 70 in Washington County. At this location co-defendant Middlebrooks was observed handing a suitcase to Defendant, who placed the suitcase inside of his tractor trailer cabin. Agents did not observe Defendant hand anything to Middlebrooks. Middlebrooks then departed the area. Defendant was arrested at the road side stop, and a large quantity of currency was recovered from the suitcase in the tractor trailer cabin. Testimony at the October 4, 2011, hearing indicated that the sum was $705,000.00. The co-defendants were arrested at a separate location and sixteen kilograms of cocaine was recovered.

Agent John Walters candidly testified that prior to September 29, 2011, agents had absolutely no idea who Defendant was and had no indication via either wiretap surveillance or physical surveillance that Defendant was at all associated with Middlebrooks. Agent Walters also testified that agents observed Middlebrooks hand Defendant the suitcase which was later discovered to contain currency. Agent Walters testified, however, that none of the agents performing physical surveillance at the road side stop observed Defendant hand anything to Middlebrooks, though it's the Government's believe that Defendant must have handed Middlebrooks a package containing sixteen kilograms of cocaine.

As set forth at the Detention Hearing Defendant has two prior convictions for narcotics trafficking, the first in 1991 in Texas and the second a federal narcotics conviction in Texas.

Defendant successfully completed both sentences without incident and was released from supervision in 2002. Defendant has been employed for the past eight (8) years as an over the road truck driver and is a lifelong resident of the Houston, Texas, area.

## *Legal Standard*

The Government has not presented any evidence that Defendant is a flight risk beyond the fact that he is a lifelong resident of Texas. Rather, it appears that the Government is primarily relying on the rebuttable presumption set forth at 18 U.S.C. §3142(e) because Defendant is charged with a crime for which the maximum sentence is ten years or more. Defendant need only present some evidence to rebut the presumption. It remains the Government's burden of persuasion that detention if required. *United States v. Suppa,* 799 F.2d 115, 119 (3d Cir. 1986); *United States v. Cirillo,* 1999 WL 1456536, n. 1 (3d Cir. 1999).

Release pending trial is governed by the Bail Reform Act of 1984 which, like its predecessor, the Bail Reform Act of 1966, mandates release of a person facing trial under the least restrictive condition or combination of conditions that "will reasonably assure the appearance of the person as required." 18 U.S.C. §3142)(c)(1)(B); *See also United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir. 1985); *United States v. Honeyman,* 470 F.2d 473, 474-475 (9th Cir. 1972); *Banks v. United States,* 4134 F.2d 1150, 1153 (D.C. Cir. 1969). The Bail Reform Act attempts to balance the interest of the defendant against those of the public by generally requiring that the defendant be released unless "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the (defendant) as required and the safety of any other person and the community." 18 U.S.C. §§3142(c), 3142(e)(1); *See also United States v. Bergren,* 2009 WL 1560039 (D.N.J. May 29, 2009).

In opposing pre-trial release the Government must establish by clear and convincing evidence that releasing Defendant poses a danger to the community, *United States v. Travitz*, 807 F.2d 322, 325 (3d Cir. 1986), and it must prove a serious risk of flight by a preponderance of the evidence. *United States v Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The court is entrusted with deciding whether and "condition or combination of conditions" as set forth in §3142(c) "will reasonably assure the appearance of the (defendant) and/or the safety of the community." §3142(f).

The United States Supreme Court has observed that in "our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Accordingly, pre-trial detention is permitted only where the Government can show the individual poses a serious flight risk, may obstruct justice, or where there is a danger of recividism in one or more of the crimes actually specified by the bail statute. *Himler*, 797 F.2d at 160. The Government bears the burden of proving by a preponderance of the evidence that Defendant is a flight risk. *Id.* at 161.

In deciding whether the Government has met its burden, the Court is to consider the four factors set forth at §3142(g). Section 3142(g) sets forth in pertinent part:

**Factors to be considered.**--The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--

**(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

**(2)** the weight of the evidence against the person;

**(3)** the history and characteristics of the person, including--

**(A)** the person's character, physical and mental condition, family ties, employment,

financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

**(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

**(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. §3142(g). *See also United States v. Coleman,* 777 F.2d 888, 892 – 893 (3d Cir. 1985).

*Applying the §3142(g) Factors*

Turning to the first factor, Defendant concedes that the nature of the offense for which he is charged is quite serious. Defendant notes, however, that other than his presence on September 29, 2011, and his receipt of a suitcase from Middlebrooks there is absolutely no evidence suggesting Defendant participated in a conspiracy to distribute narcotics from December, 2009, through the date of his arrest.

Defendant contends that the weight of the evidence strongly supports his pre-trial release. Unlike the co-defendants herein, Defendant was never the subject of either wiretap or physical surveillance. Though the Government believes that Defendant was a courier for Middlebrooks, it has no evidence to support this contention. The Government observed Middlebrooks hand a suitcase to Defendant, but did not observe Defendant handing anything to Middlebrooks, let alone a package large enough to contain 16 kilograms of cocaine. According to Agent Walters' testimony agents were able to observe Middlebrooks remove the suitcase from his trunk and hand it to Defendant, but never observed Defendant hand anything to Middlebrooks and never observed anything else in Middlebrooks' trunk.

Defendant's history and characteristics also weigh heavily in favor of pre-trial release. Since completing Supervised Release in 2002 Defendant has maintained steady employment as a

truck driver, hardly the "sham employment" argued by the Government. As set forth in the Pre-trial Services Report Defendant has considerable family ties to the Houston, Texas, area where he is a lifelong resident. Pre-Trial Services set forth in its report that it could work with its office in Defendant's home district to insure Defendant's compliance with any and all conditions of release.

Considering all of the foregoing, it is clear that Defendant has rebutted the presumption of detention set forth in §3142(e) and that the Government has failed to meet its burden of showing that Defendant is either a flight risk or poses a serious risk to any other person or to his community.

        Respectfully Submitted,

        /s/ Patrick Nightingale, Esq.
        Patrick K. Nightingale, Esquire
        Attorney ID # 76015
        Nightingale Joseph, LLC
        210 Grant Street, Suite 401
        Pittsburgh, PA  15219